UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ADEPEJU MUJIDAT OGUNGBEMI,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**MEMORANDUM AND ORDER**

20-CV-3769 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

      Adepeju Mujidat Ogungbemi ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying Plaintiff's claim for disability insurance benefits under Title XVI of the Social Security Act (the "Act"). Plaintiff moves pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings reversing the Commissioner's decision and remanding for further proceedings. (*See* Pl.'s Mem. L. Supp. Mot. J. Plead ("Pl.'s Mem."), ECF No. 19-1.) Defendant cross-moves pursuant to Rule 12(c) for judgment on the pleadings affirming the Commissioner's decision. (*See* Def.'s Mem. L. Supp. Cross-Mot. J. Plead ("Def.'s Mem."), ECF No. 20-1.)

      For the reasons stated on the record at the February 9, 2022 oral argument, and as set out below, Defendant's motion is GRANTED, Plaintiff's motion is DENIED, and the Commissioner's decision is AFFIRMED.

## BACKGROUND

      Plaintiff, born in 1980, previously worked as a home health aide and certified nursing assistant. (Admin Tr. ("Tr.") 27, 375, ECF No. 9.) On January 12, 2018, Plaintiff filed a claim for disability insurance benefits alleging a disability due to ear damage and hearing issues, a neck impairment and stiffness, "buzzing in brain," headaches, high blood pressure, blurred vision,

memory and cognitive problems, reduced motor skills, and pos-concussion syndrome. (Tr. 150–56, 175.) Plaintiff's claim was denied. On August 21, 2019, Plaintiff appeared and testified at a hearing before an administrative law judge ("ALJ"). (*Id*. at 35–64.) On November 15, 2019, the ALJ issued a decision finding Plaintiff not disabled. (*Id*. at 10-34.) On June 26, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (*Id*. at 1–6.)

## STANDARD OF REVIEW

Under the Social Security Act, a disability Plaintiff may seek judicial review of the Commissioner's decision to deny her application for benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Felder v. Astrue*, No. 10-cv-5747, 2012 WL 3993594, at *8 (E.D.N.Y. Sept. 11, 2012). In conducting such a review, the Court is tasked only with determining whether the Commissioner's decision is based upon correct legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

The substantial-evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence. *See Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence . . ."). Instead, the Commissioner's decision need only be supported by "more than a mere scintilla" of evidence and by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

In deciding whether substantial evidence supports the Commissioner's findings, the Court must examine the entire record and consider all evidence that could either support or

contradict the Commissioner's determination. *See Jones ex rel. Tr.J. v. Astrue*, No. 07-cv-4886, 2010 WL 1049283, at *4 (E.D.N.Y. Mar. 17, 2010) (citing *Snell v. Apfel*, 171 F.3d 128, 132 (2d Cir. 1999)), *aff'd sub nom. Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011). Still, the Court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence. *See Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Ortiz v. Comm'r of Soc. Sec.*, No. 15-CV-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)). Indeed, if supported by substantial evidence, the Commissioner's findings must be sustained, even if substantial evidence could support a contrary conclusion or where the Court's independent analysis might differ from the Commissioner's. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Anderson v. Sullivan*, 725 F. Supp. 704, 706 (W.D.N.Y. 1989); *Spena v. Heckler*, 587 F. Supp. 1279, 1282 (S.D.N.Y. 1984).

**DISCUSSION**

**I.    Evaluation of the Medical Evidence**

Under 20 C.F.R. § 404.1520c, the ALJ "will consider the following factors when consider[ing] the medical opinion(s)" in a claimant's case: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of treatment relationship, and examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c)(1)–(5). Supportability and consistency are "[t]he most important factors when [ALJ's] consider when [they] evaluate the persuasiveness of medical opinions and prior administrative medical

3

findings[.]" *Id*. at § 404.1520c(a). The ALJ "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions" but is "not required to[] explain how [she] considered the factors in paragraph (c)(3) through (c)(5) of this section[.]" *Id*. at (b)(2). Relevant here, "when a medical source provides multiple medical opinion(s) . . . [the ALJ] will articulate how [it] considered the medical opinions . . . from that medical source together in a single analysis. . . . [The ALJ] is not required to articulate how [it] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(2).

**A. Drs. Schweiger and Lozaro's Neuropsychological Screenings**

Plaintiff argues that the ALJ failed to articulate a consideration of the neuropsychological screenings performed by Dr. Schweiger on January 26, 2018, and by Dr. Lozaro on November 13, 2018.[1] (Pl.'s Mem. at 18.) Plaintiff maintains that the ALJ's failure to articulate a persuasiveness evaluation of these two "opinions" runs afoul the duty to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions." 20 C.F.R. § 404.1520c(b). Defendant argues that these screenings are not medical opinions as defined in the regulations, and therefore the ALJ was not required to articulate a persuasiveness evaluation. (Def.'s Mem. at 19–20.) The Court agrees.

Under 20 C.F.R. § 404.1513(a)(2):

A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions in the following abilities: (i) [claimant's] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . . (ii) [claimant's] ability to perform mental demands of work activities, such as understanding, remembering, maintaining concentration, persistence, or pace, carrying out instructions, or responding appropriately to supervision, co-workers,

---

[1] Plaintiff incorrectly states that Dr. Lozaro's report is from 2019. A review of the record (including Plaintiff's own citations to the record) reveals that Dr. Lozaro's report is dated November 13, 2018. (Tr. at 860.)

4

or work pressures in a work setting; (iii) [claimant's] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [claimant's] ability to adapt to environmental conditions, such as temperature extremes or fumes."

20 C.F.R. § 404.1513(a)(2).

Dr. Schweiger's January 2018 report notes that Plaintiff sustained "cognitive decline due to the injury of record" and the decline "is consistent with the patient's complaints, as such a deficit may result in problems of daily function, such as dealing with medications, appointments, shopping, designing and executing meals, prioritizing activities, bill paying and more." (Tr. at 417, 599, 858.) Dr. Lozaro's report noted that Plaintiff "exhibited genuine test-taking attitude and some improvement since the initial evaluations[,] however . . . continues to present with difficulties in memory, attention, visual spatial motor skills and verbal function relative to her estimated pre-morbid abilities." (*Id*. at 861.) While these reports touch on Plaintiff's limitations, they do not advise what Plaintiff "can still do" in spite of those limitations. Accordingly, as Defendant argues, these reports are more appropriately classified as "objective medical evidence"—that is, "medical signs, laboratory findings, or both[.]" 20 C.F.R. § 404.1513(a)(1).

Even if Dr. Schweiger and Dr. Lozaro's reports are "medical opinions," they were adequately considered by the ALJ. The ALJ specifically considered Dr. Schweiger's January 2018 "Initial Neuropsychological Screening" in determining Plaintiff's residual functional capacity ("RFC"). (*Id*. at 20; *see id*. at 415–418, 597–560, 856–859 (Schweiger); 860–862 (Lozaro).) The ALJ noted that this evidence indicated a decline in attention/concentration, executive function, processing speed, visual memory, and visual spatial ability, and that Plaintiff was assessed with post-concussion syndrome, neuropsychological deficits secondary to brain trauma. (*Id*. at 20.) The ALJ further noted that Plaintiff's deficits as indicated in the screening may result in problems with daily functions, such as dealing with medications, appointments,

5

shopping, designing and executing meals, prioritizing activities and paying bills. (*Id*.) Finally, the ALJ noted that the report indicated that Plaintiff was recommended for cognitive remediation therapy, which she reported helped. (*Id*.)

Although the ALJ did not specifically reference Dr. Lozaro's November 2018 report, she cited to the medical source containing the report at the same time she considered Dr. Schweiger's January 2018 neurological screening. (*Id*. at 20.) Indeed, the reports of Drs. Schweiger and Lozaro were provided as part of the medical records received in connection with Plaintiff's application for worker's compensation. Under 20 C.F.R. § 404.1520c(b)(2), "when a medical source provides multiple medical opinion(s) . . . [the ALJ] will articulate how [it] considered the medical opinions . . . from that medical source together in a single analysis. . . . [The ALJ] is not required to articulate how [it] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(2).

The ALJ specifically addressed the records received in connection with Plaintiff's worker's compensation application, which included Drs Lozaro and Schweiger's reports. Specifically, the ALJ noted that she did not find these records persuasive to the extent they indicated "100% disability, total disability or limitations to no heavy lifting, pushing, pulling, carrying, prolonged standing, walking, climbing, repetitive motion and heights, weight limit of 5 to 10 pounds." (Tr. at 27.) The ALJ explained that these records were not persuasive because they were given by providers relying on state worker's compensation guidelines for determining disability, as opposed to SSA regulations. (*Id*.) Further, the ALJ found these records were not consistent with a total inability to work because, at various points, Plaintiff indicated that she is independent in activities of daily living, consistently walks with a normal gait, and clinical examination findings do not reveal abnormal sensation, reflexes, or strength. (*Id*.) The ALJ

6

plainly addressed the supportability and consistency factors with respect to the worker's compensation reports and records as a source in accordance with the regulations. Accordingly, the ALJ satisfied her obligation with respect to these records. *See* 20 C.F.R. § 404.1520c(b)(2).

### B. Remaining Medical Evidence

Plaintiff maintains that the ALJ failed to evaluate the medical opinion evidence using the factors set forth in 20 C.F.R. § 404.1520c(b)(1). (Pl.'s Mem. at 22.) Regarding Plaintiff's mental impairments, Plaintiff suggests that the ALJ did not properly evaluate the opinions of Drs. Golzad, Finkel, and Hearns, in addition to Drs. Schweiger and Lozaro. (*Id*.) Plaintiff's argument fails—the ALJ provided a persuasiveness assessment for Drs. Golzad, Finkel, and Hearns. Specifically, the ALJ was limitedly persuaded by Dr. Michael Hearns' opinion that claimant has a temporary total disability restricting the claimant to no work as a PCA, no heavy lifting, pushing, pulling, carrying, prolonged standing, walking, climbing, and repetitive motions, should avoid heights at this time, and has a weight limit of 5-10 lbs. (Tr. at 26.) The ALJ gave Dr. Hearns' opinion some deference as that of a treating provider, but also noted that he relied on state worker's compensation guidelines for determining disability that are difference from SSA regulations. (*Id*.) Further, the ALJ noted that the record is not consistent with a total inability to work because, at various points, Plaintiff indicated that she is independent in activities of daily living, consistently walks with a normal gait, and clinical examination findings do not reveal abnormal sensation, reflexes or strength. (*Id*.) The ALJ also found Dr. Morton Finkel's opinion that Plaintiff is totally disabled to be persuasive to a limited degree because it is that of a treating provider opinion but also relied on state worker's compensation guidelines. (*Id*. at 27.) The ALJ noted that the opinion was not consistent with a total inability to work for the same reasons as Dr. Hearns' opinion. (*Id*.) Finally, the ALJ found Dr. Mehrdad Golzad's November 2018

7

opinion that the claimant's headache disability was 94% is persuasive to the extent that the claimant's severe impairment results in functional limitations. (*Id*.) However, the ALJ also found the opinion vague because it did not provide for specific limitations and the percentage of disability did not translate to limitations. Notably, Dr. Golzad's opinion also relied on workers' compensation guidelines. (*Id*.)

The guidelines only require the ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions[.]" 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ specifically gave the opinions of Dr. Hearns and Finkel some deference as treating provider opinions but also discounted those opinions because they relied on worker's compensation guidelines for a disability determination. Further, the ALJ identified the reasons why she found Dr. Golzad's opinion vague. These considerations clearly go to supportability. *See* 20 C.F.R. 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."). Further, the ALJ provided an explanation as to why and how these opinions were consistent with the record. Accordingly, the ALJ satisfied her obligation to evaluate these medical opinions.

Next, Plaintiff argues that the ALJ failed to properly evaluate the physical limitations and findings of "100%" disability made by Drs. Hearns, Chang, and Barnes. (Pl.'s Mem. at 27–29). Again, as Plaintiff acknowledges, these opinions were given by providers relying on worker's compensation reports and records. (*See id*. at 27.) The ALJ specifically addressed the worker's compensation reports and records, giving no deference to statements that Plaintiff was "totally disabled" or "100%" disabled because they were provided by doctors relying on worker's compensation standards. (Tr. at 27.) The ALJ further noted, correctly, that opinions of disability

8

are reserved to the Commissioner. (*Id*.) Nonetheless, the ALJ still articulated persuasiveness evaluations of Drs. Hearns, Desrouleaux, Finkel, and Golzad (*Id*. at 26–27), and evaluated Dr. Chang's finding that Plaintiff had "100% total temporary disability, and was limited to no heavy lifting, pushing, pulling, carrying, prolonged standing, walking, climbing, and repetitive motions" (*Id*. at 19). At bottom, Plaintiff's argument generally takes issue with the ALJ's treatment of evidence supporting her claim of total disability. But there is no support for the argument that the ALJ did not fulfill her duty to evaluate the evidence in accordance with 20 C.F.R. § 404.1520c.

## II. Evaluation of Plaintiff's Credibility

"It is the function of the Secretary, not [the courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "A finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988) (citing *Carroll*, 705 F.2d at 643). Where, as here, the ALJ has determined a claimant has a medically determinable impairment but the claimant's statements regarding pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding. *See* SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017). In making a credibility finding, the ALJ must consider the following factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. "The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the ALJ gave to the individual's statements and the reasons for that weight." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (internal quotation marks omitted).

Notably, Plaintiff does not assert that the ALJ failed to consider the above regulatory factors in making a credibility determination. Rather, Plaintiff maintains that the ALJ erred by concluding that Plaintiff's alleged symptoms were inconsistent with the record. (Pl.'s Repl. Supp. Mot. J. Plead ("Pl.'s Repl.") at 8–10, ECF No. 21.) First, according to Plaintiff, the performance of minimal daily activities does not justify an adverse credibility determination. (Pl.'s Mem. at 30.) Plaintiff argues that "activities of daily living" ("ADLs") are "basic to human function . . . that an inability to perform these ADLs would indicate a far more profound level of impairment than the Social Security Act requires for benefits." (Pl.'s Repl. at 9.) Plaintiff maintains the ALJ did not explain how Plaintiff's ability to perform daily tasks supports her RFC or is inconsistent with her statement regarding her symptoms. (*Id*.) Second, Plaintiff points out that the ALJ's finding that Plaintiff can climb three flights of stairs and walk five blocks is based on statements made in 2017 and are contradicted by more recent statements made to her doctor in 2019. (*Id*.) Third, Plaintiff argues the ALJ's finding that Plaintiff cooks and shops twice per week is at odds with statements that her sons help her prepare meals, which are

10

usually prepared in the microwave, that she loses things and needs reminders, and that she can only walk/stand for 20 minutes. (*Id*. at 9–10.) Fourth, Plaintiff argues that the ALJ's conclusion regarding Plaintiff's gait and use of a cane is incomplete because Plaintiff also reported some walking limitations at times. (*Id*. at 10.) Fifth, and finally, Plaintiff argues that the ALJ's conclusion that Plaintiff does not have barrier to communication ignores the assessments by Dr. Schweiger and Dr. Lozaro, who reported Plaintiff appeared fluent in English but was not always very clear and had a foreign accent. (*Id*. at 10.) These arguments are unavailing.

      Conspicuously absent from Plaintiff's argument is any contention that the ALJ failed to adhere to the regulatory requirements when making a credibility determination. Nor could she have on this record. That is, Plaintiff's argument is belied by the ALJ's decision itself, which clearly adheres to the regulations. With respect to daily activities, the ALJ noted that: (i) Plaintiff typically "showers and dresses, has breakfast and goes outside for exercise, helps her children with lunch, prepare[s] dinner and watches television" (Tr. at 18); (ii) Plaintiff "has no problems with personal care activities, and prepares meals daily with assistance from her sons" (*Id*.); (iii) Plaintiff "needs assistance with laundry and clean, can travel independently and uses public transportation" (*Id*.); (iv) Plaintiff "shops in stores twice a week for two hours at a time" (*Id*.); (v) Plaintiff "speaks with relatives on the phone daily and goes to the community center when she needs help" (*Id*.); (vi) Plaintiff has "some difficulties with lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, and reaching" (*Id*.); and (vii) Plaintiff "uses glasses, has no problems paying attention and can finish what she starts" (*Id*.). With respect to Plaintiff's physical ability to climb three flights of stairs and walk five blocks, the ALJ specifically considered the more recent July 2019 notes from Dr. Oribe indicating that Plaintiff's "power coordination and gait were normal." (*Id*. at 23.) With respect to Plaintiff's ability to

communicate, the ALJ specifically considered a January 2019 record indicating that Plaintiff was seen for hearing loss and reported difficulty discriminating voices, tinnitus, and hearing loss (*Id.*). At bottom, Plaintiff's argument fails to demonstrate that the ALJ did not consider the very evidence she points to as contradicting the ALJ outcome.

      Further, the ALJ concluded that Plaintiff's "reports of totally disabling subjective symptoms are not supported by the overall record" and that "Plaintiff provided little objective medical evidence to support a claim that her impairments precluded her from all work activity." (Tr. at 24.) Specifically, the ALJ noted that: (1) "claimant indicted that her self-care activities and activities of daily living were generally intact"; (2) "claimant indicated that she can climb three (3) flights of stairs and walk five (5) blocks"; and (3) "a review of the record indicates sporadic use of a cane . . . [and] many records reveal that her gait is noted to be normal with no use of an assistive device mentioned." (*Id.*) Further, the ALJ identified the following inconsistencies in the record: (i) Plaintiff offered inconsistent histories regarding the way in which her injuries were sustained, such as being struck in the head with a fan, slipping and falling, and being punched in the face (*Id.* at 18–19, 24, 1029, 1034, 1036); (ii) testing revealed hearing loss, but records also showed Plaintiff sustained hearing lsos before she stopped working in April 2017 (*Id.* at 24, 1034); (iii) records consistently indicated that Plaintiff had no barriers to communication, she wore hearing aids at least being in 2019, and had no issues testifying at the administrative hearing (*Id.* at 24, 51, 447, 790, 805, 971, 1034); (iv) Plaintiff denied that she uses public transportation, while her medical providers noted that she used public transportation (*Id.* 24); (v) although Plaintiff used an interpreter at the hearing, the record indicates she is able to communicate in English and testified that her CAN and PCA class were conducted in English (*Id.* at 24); the record indicated that Plaintiff denied any depressive or anxiety-related symptoms

12

on consultative examination, with the first report of depression coming in 2019 (*Id*. at 17, 24); (vi) overall, the record indicated Plaintiff's condition was managed, with no indication of more than moderate limitations (*Id*.). The ALJ noted that she did not include the use of a cane in the RFC because the record only intermittently indicated that the Plaintiff used an assistive device for walking and SSR 96-9p specifically indicates that the use of an assistive device does not significantly erode the number of sedentary jobs. (*Id*. at 25.)

Plaintiff cites several cases for the proposition that a claimant need not be an invalid to be found disabled. This of course is not what the ALJ found. In any event, Plaintiff's cases are unavailing. In *Balsamo v. Chater*, the Second Circuit found that the ALJ failed to establish the claimant's ability to perform sedentary work and the finding was not supported by substantial evidence. 142 F.3d 75, 81–82 (2d Cir. 1998). Specifically, the court remanded based on the ALJ's conclusion that the claimant was not "homebound" because he "periodically" attended church and occasionally helped his wife go shopping. *Id*. at 81. Here, Plaintiff does not attack the ALJ's RFC determination and does not contend the RFC determination is unsupported by substantial evidence. Instead, Plaintiff challenges the ALJ's credibility determination. No such challenge was raised in *Balsamo*. In any event, the ALJ thoroughly detailed support found in the record for Plaintiff's RFC determination. In *Aviles-Guzman v. Commissioner of Social Security*, 2021 WL 663979, * 13 (E.D.N.Y. 2021), the court found that "the ALJ selectively relied on reports of Plaintiff's daily activities without considering Plaintiff's limitations in performing those activities[.]" 2021 WL 663979 at * 13 (E.D.N.Y. 2021). That is not the case here. As noted above, the ALJ specifically considered the limitations Plaintiff points to in making a credibility determination. (*See, e.g.*, Tr. at 18 (Plaintiff "prepares meals daily with assistance from her sons.").)

13

In sum, the ALJ provided specific reasons for finding Plaintiff's statements uncredible and inconsistent with the record. The ALJ further provided a lengthy consideration of the medical evidence sufficient to satisfy the regulatory factors. That is all that is required. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) ("[T]he ALJ is free to accept or reject testimony of a witness, provided that when a witness is found not to be credible, the ALJ provides findings with sufficient specificity to permit intelligible plenary review of the record.")

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is DENIED, Defendant's cross-motion for judgment on the pleadings is GRANTED, and the Commissioner's final decision is AFFIRMED.

SO ORDERED.

Dated: Brooklyn, New York  
      March 3, 2022

/s/ LDH  
LASHANN DEARCY HALL  
United States District Judge